UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:24-cr-281-WFJ-SPK

MOHAMED NIDAL JABER
a/k/a "Mo"

### UNITED STATES' MOTION FOR PRETRIAL DETENTION

The United States of America, pursuant to 18 U.S.C. §§ 3142 (f)(1)(A), (B), and (C) and 3142 (e)(2)(A) and (B), moves the Court to detain Mohamed Nidal Jaber.

### BACKGROUND

On June 20, 2024, Mohamed Nidal Jaber, and others, were indicted by the grand jury on charges including RICO conspiracy, drug trafficking conspiracy, Hobbs Act conspiracy, and bank fraud, in violation of 18 U.S.C. §§ 1962(c), 1951, 1344 and 21 U.S.C. §§ 841 and 846.

In 2021, law enforcement officers with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Drug Enforcement Administration (DEA), Tampa Police Department (TPD), and Hillsborough County Sheriff's Office (HCSO) began investigating a criminal street gang named "AP." "AP" is named for Alexander Park, a residential neighborhood in Tampa, Florida, where many members of the gang grew up. Through this investigation, Christian Andujar-Rivera has been

identified as the leader of AP.[1] Other members of the gang include Irving Diego Bruzon,[2] Xavier Chase Gardner,[3] Julissa Marie Collazo, Kyle Miller,[4] and the defendant, Mohamed Nidal Jaber.

## MEMORANDUM OF LAW

Under the Bail Reform Act, this Court must order the defendant's detention if, after a hearing, it finds that "no condition or combination of conditions will reasonably assure [his] appearance ... as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The government bears the burden of proving (1) by a preponderance of the evidence that no condition or conditions will reasonably ensure his appearance or (2) by clear and convincing evidence that no condition or conditions will ensure the safety of any other person and the community. *See United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990). The government need only prove either flight risk or danger to the community to justify pretrial detention. *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988).

The "dangerousness" necessary to justify pretrial detention "has a much broader construction than might be commonly understood in everyday parlance." *Id.* at 487, n.2. It extends to non-physical harms, including "the danger that the

---

[1] Andujar Rivera is currently incarcerated at FCI Terra Haute after being convicted of being a felon in possession of a firearm, 8:22-cr-325-JSM-MMR.
[2] Irving Diego Bruzon was sentenced on June 10, 2024, in the Southern District of Florida, to 125 months' imprisonment for Hobbs Act robbery and brandishing and discharge of a firearm in furtherance of a crime of violence, 1:23-cr-20317. He is awaiting designation to BOP.
[3] Xavier Chase Gardner is awaiting trial in Shelby Township, Michigan on charges of carjacking, armed robbery, torture, and unlawful imprisonment, 23-008747.
[4] Kyle Miller is awaiting extradition to Shelby Township, Michigan on charges of carjacking, armed robbery, torture, and unlawful imprisonment, 23-008735.

2

defendant might engage in criminal activity to the detriment of the community." *Id*. The risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.' *Id*. Furthermore, mandatory minimum sentences create a substantial incentive for a defendant to flee. *Id*. at 489.

Additionally, pursuant to 18 U.S.C. § 3142(e)(3), "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance … as required and the safety of the community if the judicial officer find that there is probable cause to believe that" a defendant committed an offense "for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act." Here, the defendant is charged in Count Two of the Indictment with conspiring to possess with intent to distribute 1,000 kilograms or more of marijuana. For this charge, the defendant is facing a sentence of ten years' imprisonment up to life. 21 U.S.C. § 841(b)(1)(A).

It is also important to note that, although Count One, RICO conspiracy, does not trigger a rebuttable presumption, the defendant also faces life imprisonment on that count. Because the AP Enterprise is alleged to have engaged in racketeering activity that includes acts of murder and armed robbery the statutory maximum sentence of Count One is life imprisonment. 18 U.S.C. § 1963(a).

According to 18 U.S.C. § 3142(g), to determine whether there are conditions of release that will reasonably assure the appearance of a defendant, and safety of the community, the Court must consider various factors, to include: (1) the nature and

3

circumstances of the charged offense, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the risk of danger to any person or the community that the defendant would present if released.

In this case, all of these factors weight strongly in favor of detention. The defendant is both a flight risk and danger to the community. Therefore, the defendant cannot overcome the presumption that he should be detained.

***NATURE AND CIRCUMSTANCES OF THE OFFENSE***

The nature and circumstances of this offense are very serious and weigh in favor of detaining the defendant. Since April 2020, AP members, including the defendant, have engaged in acts of racketeering that include conspiracy to commit murder, robbery, arson, drug trafficking, and obstruction of justice. Doc. 1. The defendant is facing a life sentence on Count One and a 10-year mandatory minimum up to life sentence on Count Two.

***THE WEIGHT OF THE EVIDENCE***

The weight of the evidence in this case is strong and weighs in favor of detaining the defendant. The evidence against the defendants in this case includes text messages, social media posts and messages, business records, GPS tracker data, ballistics comparison, and witness and cooperator testimony. The investigation revealed that members of AP used GPS tracker devices to stalk and surveille targets of violent crimes including shootings. Members of this group also committed commercial burglaries and residential robberies, usually armed with firearms, to steal hundreds of pounds of marijuana throughout Oregon, California, and Florida.

For example, law enforcement recovered a text exchange between the defendant and Andujar Rivera from April 2021 where Andujar Rivera sent the name and date of birth of J.S. to find out whether J.S. had any vehicles in J.S.'s name. A few months prior to the text between Andujar Rivera and the defendant, J.S. and her boyfriend, a Latin King and rival to Andujar Rivera, were shot in a parking garage by unknown assailants. The defendant responded to Andujar Rivera's text that he would check on the information. He later responded to Andujar Rivera that he needed J.S.'s driver's license number to get the information. By that point, Andujar Rivera revealed to the defendant that he had gotten the information on J.S.'s vehicle from another source. A few months later, J.S. found a GPS tracking device on her vehicle the day after her boyfriend was again shot and almost died. GPS tracker data records show that trackers paid for by Andujar Rivera and Collazo were present in the area of J.S.'s residences in the weeks leading up to that near-fatal shooting of her boyfriend in July 2021.

Additionally, agents were provided information that the defendant and other members of AP were involved in an armed home invasion robbery in California in 2021. During that robbery, the defendant, Andujar-Rivera, Bruzon, and others broke into an occupied residence to steal marijuana from the residents at that location. During that robbery, a female resident put up a fight and the defendant held a fork to her throat to gain compliance from her. The group was able to steal approximately 100 pounds of marijuana from the residence.

5

Furthermore, evidence uncovered in this investigation shows that, in January 2022, the defendant and other AP members, including Andujar Rivera, Bruzon, and Gardner used GPS trackers paid for by Andujar Rivera and Collazo to track two individuals in the Southern District of Florida. Evidence produced by this investigation indicates that the defendants attempted to break into the home of the two individuals. When that did not work, the defendants went to a business owned by the two individuals and stole approximately $50,000 worth of merchandise and a few pounds of marijuana. Two GPS trackers were later discovered on the individuals' vehicles.

Agents recovered a video from Andujar Rivera's phone that was taken at the defendant's residence in Hillsborough County shortly after the burglary in south Florida. The video showed the defendant, Bruzon, Gardner, and others distributing items, including shoes, clothes, and marijuana stolen from the store. In May 2022, agents served a search warrant at a residence in Hillsborough County that the defendant had recently vacated. They discovered several dozen spent casings, multiple projectiles, and several items taken from the south Florida business in January 2022. Additionally, in July 2022, Andujar Rivera allowed law enforcement to search his residence in Hillsborough County. They discovered several firearms, a bullet proof vest, and shoes taken from the business in the Southern District of Florida.

Members of AP were also known to engage in shootings with rival gang members. A member of AP was killed at Scores Gentlemen's Club on April 17,

2023, by an associate of the Latin Kings. The defendant was present at the scene of the shooting. His vehicle was impounded as evidence by TPD. After the defendant consented to a search of his vehicle, investigators discovered two firearms[5] and a .40 caliber bullet casing inside of the vehicle.

Six days later, on April 23, A.H., was murdered in broad daylight in the parking lot of strip mall in Hillsborough County. A surveillance video recording of the murder depicts a gray Jeep Grand Cherokee that pulled up to the victim's car, a Honda Accord. An individual in all black wearing a mask and gloves exited the Grand Cherokee, looked inside of the passenger side window, and began to shoot into the car. Bullets passing through the passenger window and exiting the driver's side window are visible in the video. The video shows that two other individuals, dressed in black with masks, gloves, and long guns, also exited the Grand Cherokee and began shooting at the victim's car.

HCSO investigators responded to the scene where A.H. was dead inside of the Honda. A. H. was a member of Latin Kings. According to the Hillsborough County Medical Examiner's Office, A.H. was shot 17 times. Approximately 70 .40 caliber and .223 caliber casings were recovered from the parking lot. One of the .40 caliber casings recovered from the parking lot was matched through National Integrated Ballistic Information Network (NIBIN) [6] with the .40 caliber casing recovered from

---

[5] These firearms are the subject of the defendant's pending federal criminal case, *United States v. Jaber*, 8:22-cr-324-TPB-JSS.

[6] NIBIN correlates these images against the NIBIN database and produces potential investigative leads if similar ballistic evidence exists within the database. Ballistic evidence within the NIBIN database is primarily derived from casings recovered from criminal activity or firearms recovered by law enforcement

the defendant's vehicle the night of the Scores shooting. A Florida Department of Law Enforcement analyst opined that the .40 caliber casing found in the defendant's vehicle and one of the .40 caliber casings found at the scene of A.H.'s murder were fired from the same firearm.

## DEFENDANT'S HISTORY AND CHARACTERISTICS

The defendant's history and characteristics weigh in favor of detention. He has prior felony convictions for grand theft, conspiracy to commit racketeering, burglary smash and grab, and grand theft smash and grab. He also has a conviction for failure to appear.

Here, the defendant is being accused of very serious and violent offenses. It is important to note that the conduct the grand jury has charged the defendant and his co-defendants in the instant case is very similar to the burglary smash and grab racketeering conspiracy that he has been previously convicted.

## RISK OF DANGER IF RELEASED

The defendant is a danger to the community. He is currently on pretrial release after being indicted in the Middle District of Florida for being a felon in possession of firearms and ammunition. During his arrest on the instant offense in the Northern District of California, investigators discovered approximately 300 pounds of marijuana, drug paraphernalia, drug ledgers, high-end jewelry, and approximately $6,000 cash in the defendant's residence.

---

officers.

The defendant continues to violate the law by trafficking in large amounts of controlled substances even while on the Court's supervision.

## **CONCLUSION**

The defendant cannot overcome the presumption of detention. He is a flight risk and danger to the community. There are no conditions that can reasonably assure his appearance or the safety of the community. The defendant should be detained.

        Respectfully submitted,

        ROGER B. HANDBERG
        United States Attorney

By:   */s/ Shauna S. Hale*
      Shauna S. Hale
      Assistant United States Attorney
      FL Bar No. 881481
      400 N. Tampa Street, Suite 3200
      Tampa, Florida 33602-4798
      Telephone: (813) 274-6000
      Facsimile: (813) 274-6358
      E-mail: shauna.hale@usdoj.gov

U.S. v. Mohamed Nidal Jaber   Case No. 8:24-cr-281-WFJ-SPF

### CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Counsel of record

        By: */s/ Shauna S. Hale*
           Shauna S. Hale
           Assistant United States Attorney
           FL Bar No. 881481
           400 N. Tampa Street, Suite 3200
           Tampa, Florida 33602-4798
           Telephone: (813) 274-6000
           Facsimile: (813) 274-6358
           E-mail: shauna.hale@usdoj.gov